UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLIE COLEMAN,

Plaintiff,

v.

KEITH SNYDER, *et al.*,

Defendants.

Case No. 1:25-cv-1308

Hon Ray K.ent

______________________________/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a

named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)." The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Further, as to the remaining Defendants, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will deny Plaintiff's motion to appoint counsel.

## Discussion

### I. Motion to Appoint Counsel

Plaintiff filed a motion for the appointment of counsel, alleging that he has been unable to obtain an attorney. (ECF No. 14.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an

---

United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. *Lavado*, 992 F.2d at 606. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See id.* The Court determines that the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Therefore, Plaintiff's motion to appoint counsel (ECF No. 14) will be denied.

## II. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility, the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan, and Marquette Branch Prison (MBP)[2] in Marquette, Marquette County, Michigan. Plaintiff sues the following ICF staff: Chaplain Unknown Hallock, Food Service Director H. Kidder, and Warden D. Bonn. (Compl., ECF No. 1, PageID.2.) Plaintiff also sues the following AMF staff: Chaplain Keith Snyder, Warden T. Wilkins, and "Food Service Director (Unknown)." (*Id.*) All Defendants are sued in their individual capacity. (*Id.*)

Plaintiff alleges that on May 6, 2024, while at MBP, he changed his religious declaration to "Judaism/Hebrew Israelite."[3] (*Id.*) This religious declaration was accepted by a nonparty chaplain at MBP. (*Id.*) In June 2024, Plaintiff was given a "Jewish kosher diet test for special

---

[2] Plaintiff's complaint describes events that occurred at MBP, but Plaintiff does not name any individuals at that facility as Defendants in this case.

[3] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

religious diet accommodation." (*Id.*) The MDOC approved Plaintiff for a "Jewish kosher diet special religious meal program" on July 18, 2024. (*Id.*)

On August 18, 2024, Plaintiff was transferred to ICF. (*Id.*) On that date, when Plaintiff arrived at that facility, he was served "a non-kosher religious meal that was vegan based no meat at all," even though Plaintiff "was approved to have meat, fish, and dairy products." (*Id.*) On October 14, 2024, Plaintiff contacted Defendant Hallock regarding Plaintiff's meal program and to explain that he was not vegan. (*Id.*, PageID.3.) Plaintiff "demand[ed]" that Defendants Hallock and Kidder "correct" his meal plan, but they did not. (*Id.*) On January 9, 2025, Plaintiff filed a grievance against Defendants Hallock and Kidder for violating his "right to a proper Jewish kosher diet." (*Id.*) In that grievance, which was ultimately unsuccessful, Plaintiff "demand[ed]" that he be served meat, fish, and dairy products. (*Id.*)

On February 17, 2025, Plaintiff was transferred to AMF. (*Id.*) At AMF, Plaintiff continued to be served food under the "vegan only religious meal program" instead of Plaintiff's "accepted Jewish kosher diet." (*Id.*) Plaintiff "demand[ed]" that Defendants Snyder and "FS Director (Unknown)" correct Plaintiff's meal program. (*Id.*) One week later, Defendant Snyder responded that if Plaintiff wanted meat, fish, and dairy products that are kosher, Plaintiff needed to order those items from the kosher commissary store. (*Id.*, PageID.4.) On February 21, 2025, Plaintiff filed a grievance against Defendants Snyder and "Food Service Director (Unknown)" for violating the First Amendment Free Exercise Clause and violating Plaintiff's right to a kosher diet. (*Id.*) Defendant Snyder responded to Plaintiff's grievance, stating that Plaintiff was in the statewide kosher meal program. (*Id.*) Defendant Wilkins agreed with Defendant Snyder's response. (*Id.*) This grievance was denied. (*Id.*)

On September 25, 2025, Plaintiff received a meal for the Fast of Gedaliah which was labeled "Fast of Gedaliah Men's Vegan Meal." (*Id*., PageID.5.) Plaintiff discovered that another inmate received a Fast of Gedaliah meal that included meat. (*Id*.) Plaintiff filed a grievance and demanded that Defendants Snyder, "AMF Food Service Director," and Wilkins remove Plaintiff from the vegan meal program. (*Id*.) This grievance was never processed. (*Id*.) On September 26, 2025, Plaintiff received an "MDOC declaration of religious preference" from Defendant Snyder that said that Plaintiff would need to move to "5 A/B wing" in order to participate in "religious Jewish service." (*Id*.) At some point thereafter, "AMF Food Service Director" began serving Plaintiff kosher bologna on Saturdays as "a partial compromise to Plaintiff." (*Id*., PageID.6.)

On October 8, 2025, Plaintiff received a memo from Defendant Snyder stating that Plaintiff is "just on the plain old religious meal program and his AMF feast/fast list." (*Id*.) On October 10, Defendant Snyder said that Plaintiff had a "Hebrew Israelite religious declaration which is a vegan meal menu done according to kosher regulations." (*Id*.) According to Plaintiff, his religion is Judaism and not "Hebrew Israelitism."[4] (*Id*.)

On October 13, 2025, Plaintiff was transferred back to ICF. (*Id*.) Plaintiff alleges that because his "religious observances continue[d] to be violated" after his return to ICF, he sent a kite to Defendants Hallock, Kidder, and Bonn. (*Id*.) Plaintiff asked that he be removed from the vegan diet and placed on the "Jewish kosher diet he was approved of on [July 18, 2025]." (*Id*.) Defendants Hallock, Kidder, and Bonn "agreed that Plaintiff was receiving his religious kosher diet," and Plaintiff's request to be taken off the vegan diet was unsuccessful. (*Id*.)

[4] Earlier in his complaint, Plaintiff alleges that on May 6, 2024, "Plaintiff changed his religious declaration to Judaism/Hebrew Israelite." (Compl., ECF No. 1, PageID.2.)

Plaintiff filed a grievance against "ICF Food Service Director and ICF chaplain" on October 15, 2025. (*Id.*, PageID.7.) On October 21, 2025, Defendant Hallock met with Plaintiff to review Plaintiff's latest grievance. (*Id.*) Plaintiff explained that he was approved for a Jewish kosher special diet on July 18, 2025, and that his religious declaration is Judaism. (*Id.*) Plaintiff also "demand[ed]" that he be taken off the vegan meal plan. (*Id.*) Plaintiff alleges that Defendant Hallock "agree[d]," and that Defendant Hallock told Plaintiff to refile a religious declaration in which Plaintiff requested that he be served meat, fish with scales, and dairy products. (*Id.*) Also on October 15, Plaintiff received a kite from Defendant Kidder, stating that Plaintiff's religion in the system was listed as Hebrew Israelite, and that Plaintiff was receiving the "correct items" according to this religion. (*Id.*)

Based on the foregoing allegations and Plaintiff's stated claims, Plaintiff raises First Amendment Free Exercise Clause claims, First Amendment retaliation claims, and Eighth Amendment cruel and unusual punishment claims. Plaintiff seeks declaratory and injunctive relief as well as monetary damages.

## III. Misjoinder

### A. Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Plaintiff first alleges that he was not provided with the correct religious meal plan while at ICF, and that Defendants Hallock, Kidder, and Bonn (the ICF Defendants) chose to keep Plaintiff on that meal plan despite Plaintiff's complaints and grievances. (Compl., ECF No. 1, PageID.2–3, 6–7.) Thereafter, Plaintiff alleges that while he was housed at AMF, he was not provided with the correct religious meal plan and that Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)" (the AMF Defendants) refused to change Plaintiff's meal plan. (*Id.*, PageID.3–6.)

It appears that Plaintiff believes that all the events set forth in the complaint are related because they all involve Plaintiff's dissatisfaction with his meal program. But the Court does not find that Plaintiff's allegations against the ICF Defendants are transactionally related to the claims against the AMF Defendants. See *Proctor*, 661 F. Supp. 2d at 778. The alleged unconstitutional actions of the ICF Defendants were those Defendants' responses to Plaintiff's complaints and grievances while Plaintiff was housed at ICF. (*Id*., PageID.2–3, 6–7.) Conversely, the allegations against the AMF Defendants involved those Defendants' responses to Plaintiff's complaints and grievances while Plaintiff was housed at AMF. (*Id*., PageID.3–6.)

The responses of the ICF Defendants to Plaintiff's complaints about his meal program while at ICF are not transactionally related to the responses of the AMF Defendants to the complaints Plaintiff made while at AMF. First, the alleged acts of the ICF Defendants and the AMF Defendants occurred during different periods of time and at different geographical locations. (*Id*., PageID.2–7.) Additionally, there is no indication that the decisions made by the ICF Defendants were related to, or impacted, the decisions made by the AMF Defendants, and likewise, there is no indication that the decisions of the AMF Defendants were related to, or impacted, those of the ICF Defendants. (*See id*.) Rather, Plaintiff's allegations suggest that those two groups of Defendants made independent decisions regarding Plaintiff's meal plan that were unrelated to the decisions made by the other group of Defendants. (*See id*.) Furthermore, Plaintiff makes it clear that his claims are based on the individual decisions not to correct his meal plan made by the different Defendants, and not a system-wide constitutional violation. (*Id*., PageID.8–9.) Under these circumstances, the Court concludes that Defendants Hallock, Kidder, and Bonn, all of whom work at ICF, are properly joined because Plaintiff's claims against these Defendants arise out of the same transactions and occurrences. However, the Court concludes that Plaintiff has improperly

joined Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)," all of whom work at AMF, to this action. See *Proctor*, 661 F. Supp. 2d at 778.

**B. Remedy**

Because the Court has concluded that Plaintiff has improperly joined Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)" to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint alleges events involving Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)" that took place between February 2025 and October 2025. (Compl., ECF No. 1, PageID.3–6.) The complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)", and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)" because they are misjoined. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.[5]

## IV. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

[5] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must pay the required filing fees or apply in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In this action, Plaintiff raises First Amendment Free Exercise Clause claims, First Amendment retaliation claims, and Eighth Amendment cruel and unusual punishment claims

against the properly joined ICF Defendants—Defendants Hallock, Kidder, and Bonn.[6]

### A. First Amendment Free Exercise Clause Claim

Plaintiff alleges that he was approved for a "Jewish kosher diet special religious meal program" and that when he was put on a vegan meal program, Defendants Hallock, Kidder, and Bonn refused to change Plaintiff to a meal program that included meat, fish, and dairy products. (Compl., ECF No. 1, PageID.2–3, 6–7.) Plaintiff asserts that this refusal was a violation of his rights under the First Amendment Free Exercise Clause. (*Id*., PageID.8, 9.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To show that this right has been violated, Plaintiff must establish that: (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same);

[6] In Plaintiff's complaint, he specifically identifies the claims that he intends to bring in this action. (Compl., ECF No. 1, PageID.8–9.) Under these circumstances, because Plaintiff specifically identifies his intended claims, the Court does not construe Plaintiff's complaint to raise any additional claims.

*Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely held religious beliefs, and there is no doubt that the practice of following a particular diet is a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief. . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice. . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "[A] 'substantial burden' must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult. . . ." *Id.*

The Sixth Circuit has previously described the "universal religious diet" that the MDOC serves "to all prisoners with religious dietary needs" as being created to "avoid forcing prisoners to eat foods that violate their sincere religious beliefs." *Ackerman v. Washington*, 16 F. 4th 170, 176 (6th Cir. 2021). The Sixth Circuit stated that the universal religious meals are kosher and are also vegan "because some religious beliefs forbid eating animal products." *Id.*

In this action, Plaintiff alleges that on May 6, 2024, he changed his religious declaration to "Judaism/Hebrew Israelite,"[7] and this designation was accepted by the nonparty chaplain at MBP. (Compl., ECF No. 1, PageID.2.) One month later, Plaintiff alleges that he was given a Jewish kosher diet test and was approved for the "Jewish kosher diet special religious meal program." (*Id.*) Plaintiff was subsequently transferred to ICF on August 18, 2024, and on that date, "he was served a non-kosher religious meal that was vegan based no meat at all[.]" (*Id.*) Plaintiff claims that he "was approved to have meat, fish and dairy product inside his Jewish Kosher religious meal program." (*Id.*, PageID.2–3.)

Although Plaintiff alleges that when he arrived at ICF on August 18, 2024, "he was served a non-kosher religious meal that was vegan based no meat at all," even assuming the meal Plaintiff received that day was non-kosher, following this occasion, Plaintiff's factual allegations do not show that he was receiving non-kosher meals in violation of his religious practices. Instead, Plaintiff's own allegations show that Plaintiff's problem with his meals was that they did not contain his preferred food of meat, fish, and dairy products. Plaintiff's allegations suggest that the meals he received without meat, fish, and dairy products were against his personal preference, not against his religious beliefs. Therefore, these allegations are insufficient to show a violation of Plaintiff's rights under the Free Exercise Clause of the First Amendment. *See Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (holding that prisoners "have a constitutional right to be

[7] Later in Plaintiff's complaint, he alleges that his religion is Judaism and not Hebrew Israelite. (Compl., ECF No. 1, PageID.6.) Without providing any further context or explanation, Plaintiff alleges in a conclusory manner that Defendant Kidder "maliciously change[d] the Plaintiff's religious declaration to Hebrew Israelites," rather than Judaism only (*id.*, PageID.9); but this is belied by Plaintiff's statement in the complaint that on May 6, 2024, Plaintiff himself changed his religious declaration to "Judaism/Hebrew Israelite." (*Id.*, PageID.2.) Further, the Court notes that Plaintiff does not explain how these differences in his declared religion would have impacted his meal program.

served meals that do not violate their sincerely-held religious beliefs," but concluding that "there is no constitutional right for each prisoner to be served the specific foods he desires—such as Halal meat—in prison" (citations omitted)).

Moreover, Plaintiff's allegation that the meal he received on August 18, 2024, was "non-kosher" is conclusory and not supported by factual allegations. The only facts Plaintiff provides regarding this allegedly "non-kosher" meal is that it was vegan, and therefore did not have meat, fish, and dairy products. (*Id.*) That allegation, on its own, does not support the conclusion that the meal Plaintiff received was not kosher. *See Ackerman*, 16 F. 4th at 176. Plaintiff claims that his "religious observance states clearly that he can eat specific animals" if properly prepared, and that he is "allowed to eat fish with scales and fins." (*Id.*, PageID.3.) But Plaintiff does not allege that simply because he *can* eat certain meat, fish, or dairy, that the vegan meals Plaintiff has been served are not kosher. Based on the foregoing analysis, Plaintiff's conclusion that he received a "non-kosher" meal after arriving at ICF on August 18, 2024, is not supported by any factual allegations that show in what way this meal was not kosher.

Similarly, Plaintiff also concludes that the food he received at ICF was "not a Jewish kosher religious meal" and that his "religious observances continue[d] to be violated" once he returned to ICF. (Compl., ECF No. 1, PageID.3, 6.) These conclusions are unsupported by any factual allegations to show how these meals violated Plaintiff's religious observances or in what way these meals did not qualify as a "Jewish kosher religious meal." Again, Plaintiff's only factual allegations to support those conclusions are that he was receiving a "religious vegan diet" or "vegan only religious meal program." (*Id.*) These facts do not support the conclusion that the meals Plaintiff received were not kosher. See *Ackerman*, 16 F. 4th at 176. Under these circumstances, although it is clear that Plaintiff would have preferred to receive meals with meat or fish, Plaintiff

has failed to show that he was denied kosher meals that adhere to his religious observations.[8] *See Robinson*, 615 F. App'x at 314 (concluding that "while [the prisoner-plaintiff] may prefer to be served '[H]alal meat entrees rather than vegetarian entrees and non-meat substitutes, his food preferences, as a prisoner, are limited'" (citations omitted)).

Accordingly, Plaintiff's First Amendment Free Exercise Clause claim against Defendants Hallock, Kidder, and Bonn will be dismissed for failure to state a claim.

---

[8] In Plaintiff's complaint, he specifically identifies the claims that he intends to bring in this action. (Compl., ECF No. 1, PageID.8–9.) Plaintiff did not indicate that he intended to bring a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). Nevertheless, the Court notes that had Plaintiff brought a RLUIPA claim, as explained below, he would fail to state any claim under RLUIPA.

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). "RLUIPA creates a burden-shifting framework for assessing prisoner claims." *Ackerman*, 16 F.4th at 179. First, a prisoner-plaintiff must show that (1) his "desired religious exercise is motivated by a 'sincerely held religious belief'" and (2) "the government is substantially burdening that religious exercise." *Id.* (citing *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019)).

Here, Plaintiff's allegations fail to show a violation of the RLUIPA for the same reasons that Plaintiff failed to show a violation of the First Amendment Free Exercise Clause. Specifically, Plaintiff's allegations do not show that he was denied a kosher diet. Instead, Plaintiff's allegations suggest that his meal program did not include the type of food that Plaintiff preferred (i.e., meat, fish, and dairy products). Under these circumstances, Plaintiff has failed to show a "substantial burden on [his] religious exercise." *See* 42 U.S.C. § 2000cc-1(a).

Moreover, RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd, Sossamon v. Texas*, 563 U.S. 277 (2011); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .") Plaintiff sues Defendants Hallock, Kidder, and Bonn in their individual capacities. (Compl., ECF No. 1, PageID.2.) Therefore, for these reasons, Plaintiff has failed to state a claim under RLUIPA against Defendants Hallock, Kidder, and Bonn and that claim will be dismissed.

**B. First Amendment Retaliation**

Plaintiff asserts that Defendants Hallock and Kidder engaged in retaliation in violation of the First Amendment by keeping plaintiff on his vegan meal program. (Compl., ECF No. 1, PageID.8.) Plaintiff alleges that he was kept on this meal plan as retaliation for filing grievances and civil complaints requesting to be removed from his vegan meal plan. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Here, Plaintiff identifies the protected conduct as the filing of grievances and "civil complaints" requesting to be removed from the vegan meal plan. (Compl., ECF No. 1, PageID.8.) Plaintiff alleges that the adverse action was Defendants Hallock and Kidder keeping Plaintiff on his vegan meal plan.[9] (*Id.*) Plaintiff has not alleged any facts that show that those actions by Defendants Hallock and Kidder were motivated by the alleged protected conduct, *see Thaddeus-X*, 175 F.3d at 394, and "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108.

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims against Defendants Hallock and Kidder will be dismissed for failure to state a claim.

### C. Eighth Amendment Cruel and Unusual Punishment

Plaintiff alleges that Defendant Kidder violated the Eighth Amendment's prohibition on cruel and unusual punishment by "maliciously chang[ing] Plaintiff's religious declaration" in order to keep him on a vegan meal program. (Compl., ECF No. 1, PageID.9.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

[9] Plaintiff does not assert that the initial decision to put him on a vegan meal plan was retaliatory. And, regardless, Plaintiff was placed on the vegan meal plan before the alleged protected conduct occurred, and there are no facts alleged to show a retaliatory motive for initially placing Plaintiff on that meal plan. *See Thaddeus-X*, 175 F.3d at 394.

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

First, Plaintiff's allegation that Defendant Kidder "maliciously change[d] Plaintiff's religious declaration to Hebrew Israelite" is contradicted by Plaintiff's allegation that on May 6, 2024, "Plaintiff changed his religious declaration to Judaism/Hebrew Israelite." (Compl., ECF No. 1, PageID.2.) Moreover, even if Plaintiff had successfully alleged that he was not provided meals that accommodated his religious dietary restrictions, Plaintiff does not allege that Defendants failed to provide Plaintiff with nutritious meals. A prisoner's choices with respect to food, even religious choices, do not implicate the Eighth Amendment. As this Court explained in rejecting a similar claim:

> [P]laintiff's complaint does not allege that he was denied food, or that even that he was denied wholesome or nutritionally adequate food. Instead, plaintiff alleges that he ate only fruits and vegetables solely because of his religious preference for a kosher diet. Although such an allegation might state a claim for violation of the First Amendment's free exercise clause, an allegation that a prisoner has elected not to consume the "whole meals" provided by the prison – and solely because of his religious preference – does not state a claim for violation of the Eighth Amendment.

*Mobley v. Smith*, 2007 WL 1650934, at *6 (W.D. Mich. June 4, 2007); *see also Turner v. Welkal*, 2014 WL 347815, at *9, (M.D. Tenn. Jan. 31, 2014) ("The court concludes that the plaintiff's factual allegations concerning missed meals and being served food that did not comport with his

religious convictions, construed as true, fail to establish a violation of the plaintiff's Eighth Amendment rights."); *Burks v. Campbell*, 2018 WL 6504173, at *2 (E.D. Mich. Dec. 11, 2018) ("A denial of a religious diet cannot be grounds for an Eighth Amendment claim.").

Here, Plaintiff does not allege that he was denied nutritionally adequate food. Rather, he alleges that he was served "non-kosher" food. Even if the Court accepted that conclusory allegation, it would not show that Plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Under these circumstances, Plaintiff has failed to show that Defendant Kidder violated Plaintiff's Eighth Amendment rights.

Accordingly, for these reasons, Plaintiff's Eighth Amendment cruel and unusual punishment claim against Defendant Kidder will be dismissed for failure to state a claim.

## Conclusion

The Court will deny Plaintiff's motion to appoint counsel (ECF No. 14). Further, for the foregoing reasons, the Court will drop Defendants Snyder, Wilkins, and "AMF Food Service Director (Unknown)" as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

Finally, having conducted the review required by the PLRA for the remaining Defendants, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that

any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this opinion will be entered.

Dated: September 21, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge